STATE OF CONNECTICUT *v.* OSWALDO ORTIZ, JR.
(AC 21636)

Lavery, C. J., and Schaller and Bishop, Js.

Argued April 22—officially released August 27, 2002

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief were, *Jonathan C. Benedict*, state's attorney, and *Robert M. Brennan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Oswaldo Ortiz, Jr., appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), robbery of an occupied motor vehicle in violation of General Statutes § 53a-136a and robbery in the second degree in violation of General Statutes § 53a-135 (a) (1). We conclude that it was plain error for the court to fail to instruct the jury on the affirmative defense of inoperability of the gun involved in the incident at issue, as provided for in the text of § 53a-134 (a) (4) relative to the charge of robbery in the first degree, and to fail to instruct the jury on the lesser included offense of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2) where there was uncontroverted evidence from two state's witnesses that the gun was inoperable. Accordingly, we affirm, in part, and reverse, in part the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of November 8, 1999, the victim, Scott Finch, left the Stop & Shop supermarket in Fair-

field after buying groceries. As he waited in his vehicle at a traffic light on his way home, the victim was approached by Judith Basco, who asked him for a ride. The victim agreed and drove her, at her direction, to an underground garage in Bridgeport.

While in the garage, the defendant and Antonio Camacho approached. The defendant was carrying an automatic pistol. Basco told the victim that he would not be hurt if he gave them his money. The victim was forced out of the car and had his money, cellular phone and car taken from him.

The victim reported the incident to a security guard on patrol for the University of Bridgeport, who contacted the Bridgeport police. Two police officers drove to Maplewood Avenue and Poplar Avenue, a known location for the recovery of stolen vehicles. En route, they saw the victim's car, driven by the defendant, exiting the common driveway between 762 and 772 Maplewood Avenue. The defendant saw the officers and drove the victim's car onto the curb on Colorado Avenue where he and another male got out and ran into nearby rear yards.

Assisted by two officers from the Fairfield police department and a canine officer from the state police, a search commenced. The officers proceeded to the rear of the house at 762 Maplewood Avenue, where Fairfield police Detective Michael Gagner heard a male and female voice talking inside and observed car stereo speakers outside the apartment door. In response to Gagner's knock on the door and announcement of "police," Basco answered. Although she repeatedly told the officers that no one else was in the apartment, the defendant walked out of the bathroom after the canine officer announced that he was going to release the dog.

The police searched the apartment and found groceries that were the same as those that the victim had

reported were in his car, and they found the victim's store receipt. They also found the pistol in the bathroom. The pistol had a loaded magazine and one bullet in the chamber. The defendant was arrested and charged in a substitute part A information with robbery in the first degree, robbery of an occupied motor vehicle and robbery in the second degree.[1]

At trial, the defendant claimed that he was not in the garage that evening. Rather, he testified that he was house-sitting in the apartment at 762 Maplewood Avenue and using drugs when Camacho and Ricardo Cruz arrived in the victim's car and told him that they and Basco had robbed the victim. On cross-examination, the defendant admitted that he had driven the victim's car, but only to get it out of the driveway for the people for whom he was house-sitting.

Camacho testified for the state. He stated that he originally found the gun but that the defendant used it. He testified that he knew that the gun did not work because the firing pin was broken. Later in the state's case, its expert witness, Edward Jachimowicz, a firearms and tool mark examiner at the department of public safety's forensic science laboratory, also testified as to the gun's inoperability:

"[Prosecutor]: I want to show you [the pistol] to see whether or not you recognize [it].

"[The Witness]: Yes. . . .

"[Prosecutor]: Okay. Now, have you examined that gun before?

"[The Witness]: Yes.

---

[1] In a part B information, the defendant was charged with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) (1) (A). A note in the trial court file states that the "court did not sentence the defendant as a Perst. Dangerous Felony Offender despite 11/14/00 finding of guilt by court."

"[Prosecutor]: And can you tell us in what condition you received it?

"[The Witness]: When I received this—this pistol, the firing pin was broken, and it was basically inoperable . . . .

"[Prosecutor]: Now, when you say inoperable, was it capable of discharging a bullet? First of all, did you do something to the gun?

"[The Witness]: Yes, I changed a firing pin. I put a firing pin in from the laboratory. We have a reference collection. I put it in this firearm, and the firearm functioned as it is designed to function."

The jury found the defendant guilty of all three charges, and judgment was rendered accordingly. He was sentenced to a total effective sentence of twenty-three years incarceration. The defendant thereafter appealed. In addition to his claim that the court violated his constitutional right to a fair trial and committed plain error by not instructing the jury on the affirmative defense that the pistol was inoperable, he raises two claims stemming from the court's denial of his motions for a judgment of acquittal. First, he argues that the evidence conclusively showed inoperability. He also argues that the evidence was insufficient to identify him as the perpetrator.

I

The defendant claims that the court violated his constitutional right to a fair trial and committed plain error by not giving a jury instruction, sua sponte, on the affirmative defense of inoperability of the weapon where there was uncontroverted evidence by two of the state's witnesses to that effect. We agree that this was plain error in those circumstances.

Section 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, *except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged.* Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime." (Emphasis added.) Robbery in the second degree in violation of § 53a-135 (a) (2) has the same elements as § 53a-134 (a) (4), but does not have the affirmative defense of inoperability. See *State* v. *Hawthorne*, 175 Conn. 569, 571–72, 402 A.2d 759 (1978).

At oral argument, the state noted that operability is not an element of robbery in the first degree. See General Statutes § 53a-134 (a) (4); *State* v. *Hawthorne*, supra, 175 Conn. 573. Accordingly, the state was not required to prove that the gun was operable; see *State* v. *Hawthorne*, supra, 573–74; or, for that matter, that the weapon was a gun; see, e.g., *State* v. *Bell*, 188 Conn. 406, 414–15, 450 A.2d 356 (1982); as long as the defendant had "represented" it to be a gun.

Because inoperability is an affirmative defense, the defendant was required to raise and prove it by a preponderance of the evidence. See General Statutes § 53a-12 (b). Although the claim is unpreserved, the defendant argues that the court's failure to instruct, sua sponte, was a constitutional violation and plain error.

We generally do not review unpreserved instructional claims, as we are not bound "to consider error as to

the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ." Practice Book § 42-16. As we reiterated recently in *State* v. *Marrero*, 66 Conn. App. 709, 718, 785 A.2d 1198 (2001), an improper instruction on an affirmative defense is not of constitutional magnitude and is not entitled to *Golding*[2] review. It may be reviewed, however, under the plain error doctrine. See id., 719–20.

Pursuant to Practice Book § 60-5, although we "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial," we may, "in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Success on such a claim is rare. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995). It is also a doctrine that should be invoked sparingly. See *Berchtold* v. *Maggi*, 191 Conn. 266, 274, 464 A.2d 1 (1983). An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice. *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, 520 U.S. 1213, 117 S. Ct. 1699, 137 L. Ed. 2d 825 (1997). A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. See *State* v. *Schiappa*, 248 Conn. 132, 166, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999)." (Internal quotation marks omitted.) *State* v. *Fitzgerald*, 257 Conn. 106, 111, 777 A.2d 580 (2001).

---

[2] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"To prevail on a claim of nonconstitutional plain error, the defendant must demonstrate that the trial court's improper action likely affected the result of his trial." (Internal quotation marks omitted.) *State* v. *Marrero*, supra, 66 Conn. App. 720.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995). Viewed " 'from the standpoint of its effect on the jury in guiding [it] to a proper verdict' "; *State* v. *McCalpine*, 190 Conn. 822, 830, 463 A.2d 545 (1983); we conclude that the court's instructions did an injustice to the defendant that likely affected the result of his trial because the instructions neither contained the affirmative defense of inoperability despite uncontroverted evidence of that from two of the state's witnesses, nor did the instructions discuss the lesser included offense of robbery in the second degree.

On the count of robbery in the first degree, the court instructed the jury in relevant part: "[Y]ou are going to consider robbery in the first degree under this information only if you find proven that the defendant has committed a robbery in the first place. Robbery becomes first degree when, as charged here in the information, in the course of commission of the robbery,

the defendant or another participant displayed or threatened the use of what was represented by words or conduct to be a pistol, revolver or firearm. A firearm means a pistol, revolver or other weapon whether loaded or unloaded from which a shot may be discharged. Robbery in the first degree requires the additional element of the robber or another participant displaying or threatening the use of what is represented by words or conduct to be such pistol, revolver or firearm. It is not required that such weapon be loaded or that the defendant actually has such a weapon or a firearm. *He need only represent by his words or conduct that he is so armed to be guilty of the crime of robbery in the first degree. In other words, it is sufficient if the victim is made to believe that the object that the defendant had or another participant had was, in fact, a weapon.*

"Now, if you find proven beyond a reasonable doubt that a robbery was committed by this defendant and that in the course or commission of such robbery or the immediate flight therefrom, he or another participant displayed or threatened the use of a pistol, revolver or other firearm, you shall return a verdict of guilty of robbery in the first degree. If, however, you find that the state has failed to prove beyond a reasonable doubt any one of the elements of robbery, then you will find the defendant not guilty under the first count." (Emphasis added.) The court also gave the jury a form listing the elements of the crimes with which the defendant was charged and larceny in the sixth degree as the sole lesser included offense. The form for robbery in the first degree did not contain the affirmative defense of inoperability of the weapon.

Ordinarily, the instructions given by the court would have been proper. As we previously stated, one may be convicted under § 53a-134 (a) (4) even if he does not have a weapon at all, as long as he "represents" it to be

a weapon. Our appellate courts have upheld convictions where evidence as to inoperability either was controverted or lacking entirely. See *State* v. *Dolphin*, 195 Conn. 444, 449, 488 A.2d 812 ("no evidence at the trial which could be said to raise the affirmative defense [of inoperability]"), cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Bell*, supra, 188 Conn. 414–15 (jury could have discredited defendant's testimony that bulge under his sweatshirt was hammer handle rather than gun); *State* v. *Gebeau*, 55 Conn. App. 795, 799–800, 740 A.2d 906 (1999) (no evidence regarding operability or inoperability of gun), cert. denied, 252 Conn. 922, 747 A.2d 519 (2000). Here, by contrast, the evidence was uncontroverted that the weapon was inoperable.[3] Accordingly, we conclude that it was plain error for the court to fail to instruct on the affirmative defense of inoperability so as to guide the jury to the proper verdict.

Arguing that the court's instructions were proper, the state proffers two alternate explanations. Neither are persuasive. First, the state argues that because the defendant claimed that he was not at the scene of the crime, he may have made the strategic decision at trial not to request instruction on inoperability because it

[3] Despite the dissent's assertion to the contrary, there is no more than a facial similarity between this case and *State* v. *Preyer*, 198 Conn. 190, 502 A.2d 858 (1985). Although the *Preyer* court noted that a defendant could succeed on his unpreserved instructional claim only if he could prove a constitutional deprivation or plain error, it analyzed his claim only under the constitutional rubric. As we previously noted, we agree that the failure to instruct on an affirmative defense is not of constitutional magnitude. It is, however, plain error in this case. In any event, just as our Supreme Court in *Preyer* rejected the defendant's "sweeping" claim "that a trial court *always* has an independent obligation, as a matter of law, to charge on *any* theory of defense for which there is a foundation in the evidence"; (emphasis added) id., 196; our conclusion of plain error is limited to instances such as the one at issue in which the affirmative defense is written into the statute, and the evidence proving that defense is uncontroverted and introduced by the opposing party. See id., 195–96.

would have undercut his main defense. Although we would not afford plain error review to a claim that derived from counsel's use of an unsuccessful trial strategy; see, e.g., *State* v. *Burke*, 182 Conn. 330, 332 n.3, 438 A.2d 93 (1980), citing *Gigliotti* v. *United Illuminating Co.*, 151 Conn. 114, 121, 193 A.2d 718 (1963); we cannot conclude that such strategy was at play here. The defendant's counsel stated on two occasions during his closing argument that if the jury believed that the defendant was at the scene with the gun, "then he [was] guilty of all three counts," including robbery in the first degree. We cannot conclude that it was a strategic decision by the defendant's counsel to inform the jury that if it disbelieved the defendant's defense, his client should be found guilty of robbery in the first degree, despite the uncontroverted evidence on inoperability that otherwise would trigger that affirmative defense and the lesser included offense of robbery in the second degree.

The state also argues that the jury may have inferred from the evidence that the defendant had replaced the broken firing pin with a working one for the robbery and then switched it back immediately afterward to make it inoperable. In support of that argument, the state relies on four items of evidence. First, the state relies on Camacho's testimony that the defendant had the gun during the robbery and that Camacho did not know what happened to it afterward. Second, the state relies on Basco's testimony that the defendant gave her the gun after the robbery and that she put it in the bathroom. Third, the state relies on evidence that the defendant was in the bathroom when the police came to the apartment. At oral argument, the state relied most heavily on the fourth item of evidence, i.e., that Jachimowicz had demonstrated at trial that he could make the gun operable within fifteen seconds by removing the broken firing pin with a ballpoint pen and

inserting a new pin. We disagree that the jury could have inferred, on the basis of that evidence, that the weapon was operable during the robbery.

Although operability may be shown by either direct or circumstantial evidence; see, e.g., *State* v. *Manley,* 195 Conn. 567, 573–74 n.8, 489 A.2d 1024 (1985); "inferences which do not have a basis in facts established by the evidence cannot be drawn or relied upon to sustain a verdict." (Internal quotation marks omitted.) *State* v. *Torrence,* 37 Conn. App. 482, 486–87, 657 A.2d 654 (1995), quoting *State* v. *Jackson,* 176 Conn. 257, 264, 407 A.2d 948 (1978). There was no evidence before the jury that the defendant knew how to change a firing pin or had access to a "reference collection" of unbroken ones, as did Jachimowicz. Rather, the evidence showed that the weapon was inoperable both before the robbery when Camacho found it and when examined by Jachimowicz after it had been recovered by the police. Those facts are a far cry from instances in which our appellate courts have concluded that a jury could infer operability. Compare *State* v. *Manley,* supra, 570–71 (witnesses saw defendant fire gun); *State* v. *Williams,* 59 Conn. App. 771, 777, 758 A.2d 400 (2000) (officers testified that bullet jammed in chamber was dislodged by pulling slide back on gun and tapping its bottom, that gun could be fired despite jam and that gun successfully test fired), rev'd on other grounds, 258 Conn. 1, 778 A.2d 186 (2001); *State* v. *Rogers,* 50 Conn. App. 467, 469–70, 475, 718 A.2d 985 (witness saw gunshots come from passenger side of vehicle), cert. denied, 247 Conn. 942, 723 A.2d 319 (1998); *State* v. *Hopes,* 26 Conn. App. 367, 369–70, 602 A.2d 23 (witnesses saw defendant with gun, heard gunfire one minute later and felt something pass close by their heads), cert. denied, 221 Conn. 915, 603 A.2d 405 (1992); *State* v. *Bradley,* 39 Conn. App. 82, 85, 663 A.2d 1100 (1995) (police successfully test fired gun abandoned by defendant four days earlier),

cert. denied, 236 Conn. 901, 670 A.2d 322 (1996); *State v. Zayas*, 3 Conn. App. 289, 299, 489 A.2d 380 (officer testified that bullet jammed in chamber could have jammed when defendant attempted to cock gun or when gun fell to ground), cert. denied, 195 Conn. 803, 491 A.2d 1104 (1985).

Given the uncontroverted evidence of inoperability by two of the state's witnesses, we also conclude that it was plain error for the court not to instruct the jury on the lesser included offense of robbery in the second degree in violation of § 53a-135 (a) (2). As we previously stated, §§ 53a-134 (a) (4) and 53a-135 (a) (2) contain the same elements. The only difference between them in this case is whether the defendant proved that the weapon was inoperable. See *State v. Hawthorne*, supra, 175 Conn. 573–74. Rather than instruct on robbery in the second degree, the court instructed the jury that larceny in the sixth degree was the only available lesser included offense. That came after colloquy between the court and counsel in which the court noted its belief that it "has a right and, or obligation, depending upon how it arises, to give the lesser included" offense instruction where such instruction is supported by the evidence.

In addition to the instruction on larceny in the sixth degree, the court also provided the jury with a form that stated the elements of the crimes and the lesser included offenses. The form for robbery in the first degree did not list inoperability as an affirmative defense and listed only larceny in the sixth degree as a lesser included offense.

In *State v. Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), our Supreme Court stated that under our common law, "[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is

requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."

Despite mandating that one party must request a charge to be entitled to have the charge given to the jury, our Supreme Court has reviewed an unpreserved *Whistnant* claim. See *State* v. *Henning*, 220 Conn. 417, 427–31, 599 A.2d 1065 (1991); but see *State* v. *Tomasko*, 238 Conn. 253, 259–63, 681 A.2d 922 (1996) (rejecting defendant's claim of entitlement to lesser included offense on first *Whistnant* prong where request did not comply with rules of practice); *State* v. *Killenger*, 193 Conn. 48, 57, 475 A.2d 276 (1984) (same). Additionally, we have stated that even in the absence of a request at trial for a jury instruction on a lesser included offense, an appellate court may invoke the *Whistnant* doctrine "where the trial court record justifies its application" and order that the judgment be modified to reflect a conviction on the lesser offense and that the defendant be sentenced thereon. *State* v. *Horne*, 19 Conn. App. 111, 144–45, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990).

We conclude that the defendant was entitled to an instruction on robbery in the second degree as a lesser included offense for the same reasons we discussed relative to an instruction on the inoperability of the gun. Simply put, the evidence was uncontroverted that the gun was inoperable, and the jury could have found

the defendant guilty of robbery in the second degree because that offense has the same elements as does robbery in the first degree. See, e.g., *State* v. *Morales*, 45 Conn. App. 116, 136, 694 A.2d 1356 (1997), appeals dismissed, 246 Conn. 249, 714 A.2d 677 (1998). Because we "cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense"; (internal quotation marks omitted) *State* v. *Preston*, 248 Conn. 472, 477, 728 A.2d 1087 (1999); we conclude that the court not only should have instructed the jury on that lesser included offense, but that the jury concluded that there was evidence to justify a finding beyond a reasonable doubt that the defendant had committed robbery in the second degree in violation of § 53a-135 (a) (2).

Accordingly, we reverse the judgment only as to the conviction of robbery in the first degree and remand the case with direction to render a judgment of acquittal on that charge and to modify the judgment to reflect a conviction of robbery in the second degree in violation of § 53a-135 (a) (2) and for sentencing thereon.

In light of our remand, we need not reach the defendant's claim that the court improperly denied his motions for a judgment of acquittal because the evidence supported a finding that the weapon was inoperable.

## II

The defendant's claim that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to identify him as the perpetrator can be disposed of with little difficulty because identification is a question of fact for the jury. See *State* v. *Jackson*, 257 Conn. 198, 206, 777 A.2d 591 (2001).

We review sufficiency of the evidence claims using a two part test. "First, we construe the evidence in the

light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) Id., 205.

The victim testified at trial that he was unable to identify the perpetrators when the defendant was presented to him by the police later that night because the robbers "were wearing disguises or hoods, masks, however you want to say it" and, "[a]s I told the police at the time, given the apparel of the two men, there was no way I was ever going to identify them by looks." Although Basco and Camacho identified the defendant as a participant and testified that he was carrying the gun, the defendant argues that their testimony was not credible because they testified that they were high on drugs during the crime and were hoping for leniency in exchange for their testimony in the trial. Because the victim testified that he could not identify the men in the garage and the defendant testified that he was not in the garage, the defendant argues that there was insufficient evidence to identify him.

Given the disparity in the testimony between the defendant and Camacho and Basco, the jurors were required to judge credibility. "[W]e do not sit as the [seventh] juror who may cast a vote against the verdict based upon a feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their con-

duct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) Id.

Furthermore, "the question of identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve. [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. (Internal quotation marks omitted.) Id., 206.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury could have credited the testimony of Camacho and Basco over that of the defendant. As a result, the court properly denied the defendant's motions for a judgment of acquittal.

The judgment is reversed only as to the conviction of robbery in the first degree and the case is remanded with direction to render a judgment of acquittal on that charge, and to modify the judgment to reflect a conviction of robbery in the second degree in violation of § 53a-135 (a) (2) and for sentencing thereon.

In this opinion BISHOP, J., concurred.

SCHALLER, J. dissenting. The majority concludes that the trial court committed plain error by not instructing the jury on the affirmative defense of inoperability relative to the charge of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and did not instruct the jury on the lesser included offense of robbery in the second degree in violation of

General Statutes § 53a-135 (a) (2). The majority bases both of those conclusions on the specific fact that the evidence was uncontroverted that the weapon in question was inoperable. I do not agree, and respectfully dissent.

In the present case, I conclude that the court's failure to instruct on the affirmative defense was not improper for two reasons. First, the defendant did not request that the court instruct the jury on the affirmative defense. Our case law establishes that it is the defendant's burden, and his alone, to request a jury charge on an affirmative defense. In *State* v. *Preyer*, 198 Conn. 190, 502 A.2d 858 (1985), the defendant failed to request a charge on an applicable affirmative defense that was supported by the evidence. On appeal, the defendant argued that "a trial court always has an independent obligation, as a matter of law, to charge on any theory of defense for which there is a foundation in the evidence." Id., 196. The *Preyer* court did not agree and concluded that "[t]here is no basis, in the law of this state, for the defendant's broad claim that a trial court has an independent obligation to instruct the jury on the affirmative defense . . . if the evidence at trial would suffice to support such a charge." Id.

The majority, however, is in direct conflict with *Preyer* and imposes a duty on the trial court to instruct on an affirmative defense absent any request for a specific instruction from the defendant. By way of its decision, the majority effectively has created law that *if the defendant* does not request an instruction on a viable affirmative defense, *the court* must provide the instruction on the affirmative defense to avoid committing plain error. I believe that is inappropriate in light of *Preyer* and stands in direct conflict with the governing law on the issue.

Furthermore, I am not persuaded by the majority's attempt to distinguish *Preyer*. The majority first states

that *Preyer* has only a "facial similarity" because the *Preyer* court reviewed the defendant's claim under the constitutional *Golding*[1] standard as opposed to the plain error analysis invoked in the present case. While those two doctrines admittedly apply different standards, the *Preyer* court's choice of method with which to review the unpreserved claim does not diminish its *legal conclusion* that a trial court does not have an independent obligation to instruct the jury on an affirmative defense if the evidence would suffice to support such a charge. Additionally, the fact that the *Preyer* court *did not* apply a plain error analysis in that case, in which there was evidence that was sufficient to present the defense to the jury, indicates that the *Preyer* court concluded that the trial court's failure to instruct did not constitute plain error.

The majority also attempts to distinguish *Preyer* by focusing on the phrases "always has an independent obligation" and "any theory of defense" that are used in *Preyer*'s statement of the claim. Id. The majority notes that the present case is distinguishable from that broad language because the present case is confined to the situation at hand in which there was uncontroverted evidence that the weapon in question was inoperable. Those phrases, however, are of no consequence because they are used only in the majority's recast of the defendant's claim. In that capacity, they do not have any bearing on the *Preyer* court's *conclusion of law* that "[t]here is no basis, *in the law of this state,* for the defendant's broad claim that a trial court has an independent obligation to instruct the jury on the affirmative defense . . . if the evidence at trial would suffice to support such a charge." (Emphasis added.) Id. In the absence of a useful distinction from the legal conclusion set forth in *Preyer,* I must conclude that *Preyer* controls the issue presently before us and that

[1] See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

the majority is in conflict with authority from our Supreme Court.

Second, I do not agree with the majority's reasoning that it was plain error for the court not to instruct the jury on the affirmative defense in this particular case specifically because the evidence was uncontroverted that the weapon was inoperable. Although the majority relies on that fact and distinguishes the present case from others in which the evidence of operability was contested, I do not believe that the clarity and sufficiency of the evidence of operability is the determinative factor when deciding whether a court should instruct on an affirmative defense. The conclusiveness of operability, or the potential effectiveness of an affirmative defense generally, in no way diminishes a defendant's burden of requesting an instruction on the affirmative defense or taking exception to a court's instruction that did not discuss the affirmative defense. The potency of a defense does not vitiate the procedural hurdle of requesting it or taking exception to the court's failure to include it in its jury instruction. Moreover, I cannot fathom a way, notwithstanding the majority opinion, in which the magnitude or clarity of the proof shifts the burden from the defendant to the court to ensure that an applicable affirmative defense is included in the instruction. Rather, I believe that regardless of the nature or conclusiveness of the evidence, a court is obligated to consider instructing on an affirmative defense only when the defendant has requested such a charge or when the defendant takes exception to a charge that does not address an affirmative defense.

I also conclude that the court's failure to instruct the jury on the lesser included offense of robbery in the second degree was not improper. At the outset, I note as a procedural matter that the defendant did not raise or brief the issue of whether the court's failure to instruct on the lesser included offense constituted plain

error. The majority, however, reaches that issue because, having concluded that the court, sua sponte, should have instructed on the affirmative defense, it necessarily addresses the lesser included offense. Although I understand the majority's need to address the issue as part of its analysis of the failure to charge on the affirmative defense, because I conclude that there was no plain error regarding the instruction on the affirmative defense, the question of whether the court committed plain error with regard to not instructing the jury on the lesser included offense is a separate issue. Because that issue is separate and the defendant has failed to raise it, I would not address it.

Even if I were to address the lesser included offense issue, I would not agree with the majority's reasoning that the court acted improperly in not instructing the jury on the lesser included offense merely because there was uncontroverted evidence that the weapon was inoperable. I would conclude otherwise because the contested nature of the evidence alone is not determinative of the question. Rather, the four-pronged *Whistnant*[2] test governs the issue. Although that test clearly implicates the evidence in a case, it does not rely solely on evidentiary matters. I therefore do not agree with the majority analysis, which omits the first prong of the *Whistnant* test to focus on the evidence. Although our case law states that we *may* assume that the first factor has been satisfied, such an action is not mandatory.

In the present case, I would give due consideration to the first prong of *Whistnant* because I believe it is possible that the defendant, fully aware of the evidence regarding inoperability, purposely decided not to request the lesser instruction. Instruction on the lesser included offense may not have been requested because

---

[2] See *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).

the defendant sought an outright acquittal as part of an *all or nothing* strategy, rather than a conviction of a lesser crime. I do not believe it is appropriate to ignore the first prong in this case because the defendant may well have deliberately failed to request the instruction on the lesser included offense. That likelihood is bolstered by the fact that the defendant did not assert the affirmative defense to the charge of robbery in the first degree. Under those circumstances, I would conclude that the defendant has failed to meet the first prong of the *Whistnant* test and that this is not an appropriate situation for us to ignore that failure.

In addition to that, I disagree with the majority because of the ramifications its decision will have on both the parties to a trial and the presiding court. In essence, the majority requires that if a defendant does not request an instruction on an affirmative defense or take exception to a charge that does not include such instruction when there is uncontroverted evidence to support an affirmative defense, the court is obligated to instruct on the defense for the defendant and to inform the jury of the applicability of the defense. That new requirement presents several significant problems.

First, the majority potentially deprives the prosecution of a chance to argue whether the court should instruct on an affirmative defense. Without a requested instruction by the defendant or an exception by the defendant to the court's instruction, the prosecution will have no opportunity to argue whether the court should instruct on the affirmative defense because any mention of instructing on a defense will be raised for the first time by the court at the time it actually charges the jury and informs it of the affirmative defense. I do not believe that the prosecution should be *surprised* in that manner and denied an opportunity to address the affirmative defense and the evidence underlying it. Such an outcome is patently unfair.

Second, the majority's decision may have a negative effect on a defendant's trial strategy. If a defendant argues, as the defendant in this case did, that he was not present at the scene of the crime, then defense counsel may believe that as a matter of strategy, it is not in the defendant's best interest to offer the jury an alternative in the form of an affirmative defense that places the defendant at the scene. In that scenario, the court's obligation to instruct the jury on an affirmative defense that the defendant has not requested may directly undercut the defendant's strategy. I do not believe that a defendant's trial tactics should be subject to that potential undermining. Moreover, as previously stated, it is the defendant's responsibility to request an instruction on an affirmative defense or to take exception to an instruction that does not contain one. In the context of the present discussion, keeping that burden on the defendant allows him to control his trial strategy and to assert a consistent defense. The defendant's choice, either alone or through counsel, to seek out an instruction on an affirmative defense should not implicate the court's intervention in the process.

Finally, the majority's decision imposes several inappropriate burdens on the trial court. According to the majority, if a defendant does not request an affirmative defense instruction or take exception to the court's instruction when there is uncontroverted evidence to support it, the court is obligated to instruct on the defense for the defendant. As a result, the trial court now has the burden of determining whether any affirmative defenses may apply if uncontroverted evidence exists to support them. If the court concludes that defenses do exist, it then has to determine whether uncontroverted evidence in fact exists, thereby requiring it to instruct on the defense. I note that although those determinations were not difficult to make in the

present case, other cases likely will not provide such clear answers.

For the foregoing reasons, I do not believe that the trial court's instruction constituted plain error, and I would affirm the judgment.