# STATE OF CONNECTICUT *v.* DAVID L. HAYWOOD
## (AC 26648)

Bishop, Gruendel and Borden, Js.

Argued April 14—officially released August 5, 2008

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Donald D. Dakers*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, *Walter D. Flanagan*, former state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, David L. Haywood, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a), and robbery in the first degree as an

accessory in violation of General Statutes §§ 53a-8 and 53a-134 (a). On appeal, the defendant claims that (1) there was insufficient evidence of a completed robbery, and, therefore, the conviction of felony murder and accessory to robbery must be set aside, (2) he was deprived of a fair trial on the felony murder charge because the trial court failed to instruct the jury on the legal definition of attempt for attempt to commit robbery in the first degree and (3) he was deprived of a fair trial because the court's responses to the jury's inquiries regarding conspiracy misled the jury. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On October 30, 2002, William Brown and his girl-friend, Ukiah Cunningham, resided in a single-family house in Bethel. Brown's friend, Kevin Moriarty, was staying with the couple at the time. Brown occasionally sold small amounts of marijuana to his friends. The defendant was acquainted with Brown and had purchased marijuana from him in the past. At the time, the defendant lived in Waterbury with his brother, Bobby Beale, and was romantically involved with Cunningham's friend, Brandi Nelson.

On that day, Cunningham arrived home from work at about 5:30 p.m. Brown and Moriarty were in the house playing a video game. Shortly after Brown received a telephone call from the defendant asking for directions to his house, the defendant arrived with a tall, skinny, black male who had long dreadlocks or braids. This man was subsequently identified as Gregory Greene.

Fifteen or twenty minutes later, while Brown was in the dining room talking with Greene and the defendant, another man, later identified as Beale, entered through an unlocked rear door in the kitchen. Beale, who was carrying a gun, wore a bandana over the lower portion

of his face, and he pushed Cunningham aside and told her to be quiet. Beale went into the dining room and announced a robbery. In response, Brown asked: "This is a joke, right?" The defendant responded: "No, this is not a joke." Because the dining room and kitchen are separated by a half wall, Cunningham could hear and see what was happening in the dining room. She testified that the defendant did not appear shocked or surprised by Beale's actions, nor did he protest his actions.

Moriarty, who was still in the living room playing a video game, could not see into the dining room but heard "forceful talking" and words like "give me this, give me the money, give me the drugs, don't mess around." At first, Moriarty was unsure whether a friend of Brown's was playing a practical joke, but as a precaution, he grabbed a broom as he approached the dining room. As Moriarty turned a corner, Beale put a gun to Moriarty's chin and said: "Don't even think about it." Moriarty indicated that the defendant also had a gun and that both he and Beale were demanding money and drugs, to which Brown responded: "[H]ow could you play me like this?"

As the argument escalated, Brown began to struggle with the defendant, and Moriarty wrestled with Beale. Cunningham had followed Greene into the bedroom because he had started going through her possessions. In the dining room, a gun discharged, and a bullet struck Brown in the forehead. Moriarty testified that it was the defendant's gun that went off and that when he looked over, the defendant was about one and one-half feet away from Brown. Brown moved backward, and the defendant, who had a gun in his hand, jumped away from him. Moriarty decided to "play dead," and he "hit the deck." Cunningham, who had returned from the bedroom before the gun discharged, had not seen the defendant with a gun but testified that at the time the gun went off, the defendant was the person closest to

Brown and that they were "[r]ight in front of each other." Brown died approximately five months later of medical complications associated with the gunshot wound to his head.

Following a jury trial, the defendant was convicted of felony murder, conspiracy to commit robbery in the first degree and robbery in the first degree as an accessory. At the sentencing hearing, the defendant entered a plea of nolo contendere to a charge of violation of probation. The court imposed a total effective sentence of seventy-seven years imprisonment, comprised of sixty years for felony murder; seventeen years for conspiracy to commit robbery in the first degree, consecutive to the felony murder sentence; seventeen years for robbery in the first degree as an accessory, consecutive to the felony murder sentence and concurrent with the conspiracy sentence; and three years concurrent with the other sentences on a separate charge of violation of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that his conviction of felony murder and robbery in the first degree as an accessory must be set aside because the evidence was insufficient to prove a completed robbery. As to the felony murder conviction, this claim merits little discussion because the count of the information charging the defendant with felony murder set forth, as the predicate felony, robbery or attempt to commit robbery. Consequently, if the state's evidence of attempt to commit robbery by the defendant was sufficient, the failure to prove a completed robbery would not require setting aside the felony murder conviction.[1]

---

[1] We note that the defendant does not claim, nor could he in light of the record, that the evidence was insufficient to prove that he was guilty of an attempt to commit robbery in the first degree.

As to the count charging the defendant with being an accessory to robbery, the state concedes that there was insufficient evidence of a completed robbery because the evidence was wanting in regard to a larceny, an essential element of a completed robbery. The state posits, however, that the defendant is not entitled to an acquittal but that the case should be remanded to the trial court with direction to modify the judgment rendered on the accessory count to reflect a conviction of accessory to attempt to commit robbery in the first degree. We agree with the state.

Our Supreme Court "has modified a judgment of conviction after reversal, if the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant of a lesser included offense." (Internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 160, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006). The test used to determine whether one crime is a lesser offense included within another crime is "whether it is not possible to commit the greater offense, in the manner described in the information . . . without having first committed the lesser . . . . This . . . test is satisfied if the lesser offense does not require any element which is not needed to commit the greater offense." (Internal quotation marks omitted.) *State* v. *Walker*, 87 Conn. App. 251, 255, 865 A.2d 1212, cert. denied, 273 Conn. 915, 870 A.2d 1084 (2005).

Our Supreme Court has held that "attempted robbery in the first degree is a lesser included offense of robbery in the first degree . . . ."[2] *State* v. *Gould*, 241 Conn. 1,

[2] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or

24, 695 A.2d 1022 (1997). In *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984), the court held that "[r]obbery differs from attempted robbery only in that the latter requires an act constituting a substantial step toward completion of the robbery, rather than a completed robbery. While some jurors might have believed that the defendant attempted the robbery but did not complete it, and others might have believed that he did, in fact, complete the crime, none could have believed that the defendant completed the robbery without first undertaking a substantial step toward achieving its object. The unanimous verdict of guilty thus necessarily encompassed a unanimous finding that the defendant had at least attempted to commit robbery." Id., 76–77; see also *State* v. *John,* 210 Conn. 652, 689, 557 A.2d 93 ("[a] unanimous verdict of guilty of robbery necessarily encompasses a unanimous finding that the defendant had at least attempted to commit robbery"), cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

In this case, because the jury unanimously found the defendant guilty of a completed robbery, it necessarily found him guilty of attempt to commit robbery. We therefore conclude that the defendant's conviction of robbery in the first degree as an accessory should be reversed and the case remanded to the trial court with direction to modify the judgment to reflect a conviction of attempt to commit robbery in the first degree as an accessory, and to resentence the defendant in accordance with that conviction.[3]

omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

[3] Although in most of the cases that we have reviewed in which this court or our Supreme Court has modified a judgment to reflect a conviction of a lesser included offense, the jury was instructed on the lesser included offense, we do not believe this factor is critical. Rather, the common thread we find in all cases involving the modification of a criminal judgment is the court's conclusion on appeal that the jury had to have found that the state proved all the essential elements of the lesser included crime in order to have found the defendant guilty of the greater crime. See *State* v. *Greene,*

## II

The defendant next claims that he was deprived of a fair trial on the felony murder charge because the court failed to instruct the jury on the legal definition of attempt for attempt to commit robbery in the first degree. We are unpersuaded.

The following additional procedural history is necessary for our review of the defendant's claim. The defendant was charged with felony murder, predicated on either robbery or attempt to commit robbery. During his argument to the jury, the defendant claimed that the state had failed to prove a completed robbery

---

supra, 274 Conn. 134; *State v. Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992); *State v. McGann*, 199 Conn. 163, 506 A.2d 109 (1986); *State v. Cochran*, 191 Conn. 180, 463 A.2d 618 (1983); *State v. Scielzo*, 190 Conn. 191, 460 A.2d 951 (1983); *State v. Coston*, 182 Conn. 430, 438 A.2d 701 (1980); *State v. Saracino*, 178 Conn. 416, 423 A.2d 102 (1979); *State v. Grant*, 177 Conn. 140, 411 A.2d 917 (1979); *State v. Wade*, 106 Conn. App. 467, 942 A.2d 1085, cert. granted on other grounds, 287 Conn. 908, 950 A.2d 1286 (2008) (appeal withdrawn June 12, 2008); *State v. Guess*, 39 Conn. App. 224, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995); *State v. McNeil*, 21 Conn. App. 519, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990); *State v. Osman*, 21 Conn. App. 299, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991); *State v. Aleksiewicz*, 20 Conn. App. 643, 569 A.2d 567 (1990); *State v. Horne*, 19 Conn. App. 111, 562 A.2d 43 (1989), rev'd on other grounds, 215 Conn. 538, 577 A.2d 694 (1990).

Additionally, in the one case we have found in which this court, on appeal, modified the judgment of conviction to a lesser included offense without the jury having been charged on the lesser offense, this court noted not only that the jury had to have found all the elements of the lesser offense to find the defendant guilty of the greater offense, but that the jury should have been charged on the lesser included offense. See *State v. Ortiz*, 71 Conn. App. 865, 879, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

Here, as in *Ortiz*, although the jury was not instructed on the statutory elements of attempt, the lack of such an instruction is not pivotal to our analysis that in order to have found the defendant guilty of the greater offense, the jury had to have found that the state proved all the essential elements of the lesser offense. On this basis, we find neither *Ortiz* nor the case at hand at variance with our jurisprudence in this area.

because there was no evidence that any property had been taken. The defendant conceded, however, that "[t]here was an attempted robbery. I don't think there's any doubt about that." The defendant argued, nevertheless, that the evidence had not established his involvement in the crime or his intent.[4]

In its instructions to the jury regarding felony murder, the court informed the jury several times that this offense was predicated on either an attempt to commit robbery in the first degree or robbery in the first degree.[5]

[4] In its argument to the jury, the state argued that it did not need to prove a completed robbery. The state argued: "Felony murder means the defendant . . . either acting alone or with one or more persons, Beale and Greene, commits or attempts to commit robbery. So, it doesn't even have to be a robbery that comes to completion. It could be an attempt to commit robbery. And in the course . . . of or in furtherance of such crime . . . the defendant or another participant, Greene or Beale, causes the death of a person . . . who was not one of the participants."

[5] In its initial charge on felony murder, the court made the following references to attempt: "The defendant is charged in the first count with the crime of felony murder in violation of [General Statutes §] 53a-54c of the Penal Code, which provides as follows. . . . A person is guilty of murder when acting either alone or with one or more persons, he commits or *attempts* to commit robbery in the first degree, and in the course of [and in] furtherance of such crime or flight therefrom, he or another participant, if any, causes the death of a person other than one of the participants.

* * *

"[The] [t]hird element the state must prove—again, this is for felony murder proof—that the defendant or another participant caused the death while in the course of and in furtherance of the commission or *attempted* commission of the crime of robbery in the first degree, or in immediate flight therefrom, and that [the] victim was not a participant. A participant is one who takes part or shares in the underlying crime.

"By this law, the legislature has provided that when—that when, during the actual commission or *attempted* commission of robbery in the first degree, or in the immediate flight therefrom, the perpetrator causes the death of another person, the perpetrator is guilty of felony murder." (Emphasis added.)

Later, in correcting omissions it made regarding intent, the court instructed as follows regarding attempt as it relates to felony murder: "The defendant is charged with the crime of felony murder in violation of [General Statutes §] 53a-54c of the Penal Code, which provides as follows. A person is guilty of murder when, acting either alone or with one or more persons, he commits or *attempts* to commit robbery in the first degree, and in the

Despite these repeated references to attempted robbery, however, the court did not define the statutory elements of criminal attempt. Following the court's charge, which included instructions on the elements of robbery in the first degree, the state indicated to the court that its felony murder instructions did not include any definition of attempt under § 53a-49. The state asked the court, first orally and then in the form of a written request, to give the jury an instruction regarding attempt liability.[6] The court, however, declined to instruct the jury regarding the definition of the crime of attempt. The defendant did not object to the court's

course of and in furtherance of such crime or flight therefrom, he or another participant, if any, causes the death of another—of a person other than one of the participants.

\* \* \*

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: that the defendant, acting alone or with one or more persons, committed or *attempted* to commit the crime of robbery in the first degree . . . .

\* \* \*

"The third element is that the defendant or another participant caused the death while in course of and in furtherance of the commission or *attempted* commission of the crime of robbery in the first degree, or in immediate flight therefrom, and the victim was not a participant.

"A participant is one who takes part or shares in the underlying crime. By this law—by this law, the legislature has provided that when, during the actual commission or *attempted* commission of robbery in the first degree or in the immediate flight therefrom, the perpetrator causes the death of another person, the perpetrator is guilty of felony murder." (Emphasis added.)

[6] Following the court's instructions to the jury, the prosecutor indicated: "Your Honor, it occurs to me—and I'm not trying to be difficult, but it occurs to me that . . . that there was no definition of larceny in the felony murder statute as had previously been, and now that definition's in there. And as I read the court's charge, nowhere in the charge is the law of criminal attempt—has the jury heard what criminal attempt is. And I think the jury should hear a charge on the law of criminal attempt, the standard charge. . . .

"Because in a sense, although I haven't formally asked for a lesser included offense charge of robbery, the definition of felony murder is that, in the course of a robbery or attempted commission of a robbery. And the jury has no definition of what attempt is."

failure to charge the jury regarding the statutory definition of attempt, nor did the defendant either join with the state or object to the state's request that the court give a supplemental instruction on the meaning of the statutory elements of attempt.

Having failed to preserve his claim, the defendant now seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] "This court has held that only under the most exceptional circumstances will it consider a claim, constitutional or otherwise, that has not been raised [in] and decided by the trial court. . . . However, [i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . Consequently, the failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Knight*, 56 Conn. App. 845, 849–50, 747 A.2d 13 (2000). Accordingly, we agree with the defendant that "the jury instruction is subject to *Golding* review because the defendant raises a constitutional claim involving a fundamental right, and the record is adequate for review." *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995).

"If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . [A] jury instruction that improperly omits an essential element

---

[7] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *State* v. *Cote*, 286 Conn. 603, 626, 945 A.2d 412 (2008). "When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." (Internal quotation marks omitted.) *State* v. *Youngs*, 97 Conn. App. 348, 361, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006).

Here, because attempt to commit robbery was a predicate crime to the charge of felony murder, and the court specifically told the jury that it could find the defendant guilty of felony murder on the basis of an attempted robbery, the state's request for an instruction on the statutory elements of attempt should have been granted. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 727, 946 A.2d 1203 (2008) ("a proper charge on felony murder predicated on an attempt crime should include an instruction on the definition of criminal attempt").

Nevertheless, the state contends, and we agree, that the omission of an instruction on the statutory elements of attempt was harmless beyond a reasonable doubt because the jury could not have found the defendant guilty of robbery in the first degree as an accessory as charged in the third count without necessarily finding that his conduct amounted to being an accessory to an attempt to commit robbery. Because the jurors could not have believed that the defendant completed the crime of robbery without undertaking a substantial step in furtherance of it; see *State* v. *Jones*, supra, 193 Conn.

76; the jury had to have determined beyond a reasonable doubt that the defendant attempted to commit robbery.[8] Accordingly, because, the information would have permitted the jury to have found the defendant guilty of felony murder on the basis of attempt to commit robbery, and one cannot commit a robbery without attempting to do so, the court's failure to provide the jury with an instruction on the statutory elements of attempt was harmless beyond a reasonable doubt.[9]

## III

The defendant finally claims that his right to due process was violated because the court's responses to two of the jury's inquiries relating to the crime of conspiracy to commit robbery in the first degree were misleading. We agree.

[8] The state's position finds further support in *Small* v. *Commissioner of Correction*, supra, 286 Conn. 707. In *Small*, the trial court instructed the jury that in order to find the petitioner guilty of conspiracy to commit robbery in the first degree and felony murder, it had to conclude that he had the mental state required to commit the crime of robbery. Id., 728–29. The jury returned a verdict of guilty of conspiracy to commit robbery in the first degree and felony murder. Id., 729. Although our Supreme Court found that the trial court should have instructed the jury on the definition of attempt, the Supreme Court held that "it is beyond question that the jury found that the petitioner possessed the requisite intent to commit a robbery" and concluded that "with respect to the element of intent, the trial court's failure to charge on attempt was harmless." Id. The Supreme Court noted that the jury rejected the petitioner's defense of mere presence and returned a guilty verdict on the counts of conspiracy to commit robbery in the first degree and felony murder and concluded that "[o]n the basis of the jury's verdict, the jury must have found that the petitioner possessed a criminal purpose, i.e., the intent to commit robbery." Id., 730.

[9] Our analysis of harmlessness regarding the court's failure to provide the jury an instruction on the statutory elements of an attempt flows from our discussion of modified judgments relating to the third count in which the defendant was charged with being an accessory to a completed robbery. In other words, our determination regarding the third count, which is that the jury had to have found that the defendant attempted to commit a robbery in order to have found him guilty of a completed robbery, obviates the need for further analysis of whether the court's failure to elucidate the statutory definition regarding attempt as it relates to the predicate offense of attempt to commit robbery in the felony murder count could have misled the jury.

The defendant was charged with conspiracy to commit robbery in the first degree with a deadly weapon in violation of §§ 53a-48[10] and 53a-134 (a) (2).[11] During deliberations, the jury asked the court whether "[t]he defendant need have prior knowledge of the presence of a gun to be convicted of conspiracy to commit robbery in the first degree as charged by the state?" In response, the court informed the jury: "[N]o. The conspiracy requires an intent to commit a crime; that, in this case, is a robbery, and there are a number of elements required. An agreement with one or more persons to engage in or cause performance of that criminal conduct, the commission of the act in—overt act in pursuance of the conspiracy. So, my answer to you would be prior knowledge is not an element of conspiracy."

The jury also asked the court whether, "[i]f the defendant was aware of a fake gun, can he still be convicted [of conspiracy]?" The court informed the jury: "Again, I will indicate that, again, you have already been instructed on the elements of conspiracy. The elements are primarily that if there was an agreement to commit an unlawful act, there was an overt act in furtherance of that agreement, and a deadly weapon, as defined, was imposed or was employed in the commission of the crime." The defendant did not object to the court's responses to either of the jury's inquiries.

The defendant now claims that the court's response to the jury's first question was "erroneous and misleading because it did not specifically advise the jury

---

[10] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[11] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

that the intended use of a deadly weapon was a necessary element of the conspiratorial agreement to commit robbery in the first degree as charged in this case." As to the second question, the defendant claims that the court's response was "erroneous and misleading because it suggested that it was enough for a deadly weapon to be 'imposed' or 'employed' while failing to tell the jury that the intended use of the deadly weapon had to be part of the conspiracy agreement entered into by this defendant."

The defendant did not object to those instructions at trial and now seeks *Golding* review. We will review the defendant's claim pursuant to *Golding* because there is an adequate record, and the defendant's claim is of constitutional magnitude. We turn to the third prong of *Golding*, which requires the defendant to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [it] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled. . . ." (Internal quotation marks omitted.) *State* v. *Aviles*, 107 Conn. App. 209, 229–30,

944 A.2d 994, cert. denied, 287 Conn. 922, 951 A.2d 570 (2008).

Our Supreme Court has stated: "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Citation omitted; emphasis added; internal quotation marks omitted.) State v. Padua, 273 Conn. 138, 167, 869 A.2d 192 (2005).

In the present case, the court instructed the jury that the crime that the state claimed was the object of the conspiracy was the crime of robbery in the first degree. The court defined the elements of the crime of robbery in the first degree and then instructed the jury that for liability under conspiracy, there must have been an agreement by the defendant with one or more persons to engage in or cause the performance of the crime of robbery in the first degree. Robbery in the first degree, as charged by the state, requires the use of a deadly weapon.[12] In its response to the jury's inquiry, the court indicated that the defendant, as a conspirator, did not have to have prior knowledge of the intent to use a deadly weapon. Although the court instructed the jury, in its initial charge, that it needed to find that the defendant agreed to all of the elements of robbery in the first degree, including the use of a deadly weapon, in order to find him guilty of conspiracy to commit robbery in the first degree, its response to the jury's inquiry directly contradicted that instruction. Thus, the court's response to the jury's inquiry was incorrect and was reasonably likely to have confused and misled the jury.[13]

---

[12] See footnote 11 of this opinion.

[13] We acknowledge that in State v. Crosswell, 223 Conn. 243, 256, 612 A.2d 1174 (1992), the court posed, without answering, the following question: "If two or more persons conspire to take particular property from someone

We now turn to the fourth prong of *Golding* and consider whether the state has established that the defect in the charge was harmless beyond a reasonable doubt. As we will discuss, when a jury is misinstructed on an essential element of a crime, such an error is harmless if the reviewing court can conclude beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence. *State* v. *Cote*, supra, 286 Conn. 626.

We cannot conclude that the evidence in the present case was so overwhelming as to render the improper instruction harmless. First, the defendant contended that he was not part of the robbery, that he just happened to be present when it happened. Thus, the defendant contested the charge of conspiracy, including the use of a deadly weapon. Although Moriarty testified that the defendant had a gun, Cunningham had not seen the defendant with a gun. There was not overwhelming evidence that the defendant had prior knowledge of or conspired to use a deadly weapon, and the court's improper response to the jury's inquiry bore directly on an essential element of the conspiracy charge. Accordingly, we conclude that the state has failed to

who has a superior right of possession, and agree to do so peacefully, do subsequent changes in the modus operandi to accomplish the taking operate to discharge a willing participant from culpability?" Because, in *Crosswell*, the decisive issue was sufficiency of the evidence, and the court found that the requisite conspiratorial intent could be inferred from the circumstances of the commission of the conspired crime, the court did not have to answer its question.

Additionally, to the extent that *Crosswell* discusses the notion of an enlarged criminal enterprise, we note that the specific holding of *Crosswell* was that the evidence of the defendant's behavior as a participant in the crime of robbery in the first degree was sufficient to prove, by inference, that the defendant had conspired to commit the crime in the manner in which it took place. We believe, moreover, that the question posed in *Crosswell* was later answered in *Padua*, which, as noted, held that, for culpability, one must conspire to commit the particular crime and not merely to perform an undefined criminal act.

establish harmlessness beyond a reasonable doubt. We therefore reverse the defendant's conviction of conspiracy to commit robbery in the first degree.[14]

The judgment is reversed as to the conviction of robbery in the first degree as an accessory and the case is remanded with direction to modify the judgment to reflect a conviction of attempt to commit robbery in the first degree as an accessory; the judgment is reversed also as to the conviction of conspiracy to commit robbery in the first degree and the case is remanded for a new trial on that charge. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[14] Because we reverse the conspiracy conviction on this ground, we need not address the court's response to the jury's second inquiry.