## STATE OF CONNECTICUT *v.* PHILLIP HIGHTOWER
### (AC 23294)

Dranginis, Bishop and DiPentima, Js.

Argued October 28, 2003—officially released February 3, 2004

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Russell C. Zentner*, assistant state's attorney, with whom, on the brief, were *Timothy J. Liston*, state's attorney, and *Cecilia B. Wiederhold*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Phillip Hightower, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the first degree in violation of General Statutes § 53a-122 (a) (3) and robbery of an occupied motor vehicle in violation of General Statutes § 53a-136a. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of larceny in the first degree and robbery of an occupied motor vehicle, and (2) the court should have instructed the jury on robbery in the second degree in violation of General Statutes § 53a-135 (a) (2). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 14, 2000, just before sunrise, Brian Hulkill was sitting in his car at the Harbor Park in Middletown when the defendant knocked on his window and showed him a bloody left arm. The defendant said that he had been attacked by a rottweiler and needed a ride home. Hulkill agreed to drive the defendant home. En route, Hulkill stopped at a gasoline station and purchased cigarettes. He continued driving along River Road following the defendant's directions. Some time later, the defendant, put his hand in his sweatpants, pointed something at Hulkill and ordered him to stop. Hulkill, believing that the defendant had a gun or another type of weapon, drove to the side of the road.

The defendant told Hulkill that if he cooperated, he would not get hurt. He then told Hulkill to empty his wallet and took Hulkill's money, approximately $50. The defendant next told Hulkill to switch places with him, and they both exited the car. Once the defendant was at the driver's side of the car, Hulkill turned and ran away. The defendant briefly pursued Hulkill before driving off with the car. Shortly thereafter, Hulkill reported the incident to the police. The defendant subsequently was arrested. After the jury returned a guilty verdict, the court sentenced the defendant to a total effective term of nine years imprisonment. This appeal followed.

## I

The defendant first claims that there was insufficient evidence to support his conviction of larceny in the first degree and robbery of an occupied motor vehicle. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996).

## A

With respect to the conviction of larceny in the first degree, the defendant argues that there was insufficient evidence produced at trial on which the jury reasonably

could have determined that the value of the car exceeded $10,000 pursuant to § 53a-122 (a) (3). The defendant further asserts that the court improperly allowed Hulkill to give opinion testimony regarding the value of the car at the time of the crime.

On direct examination, Hulkill testified that he had purchased the car, a two door, 2000 Chevrolet Cavalier in February, 2000. He further testified that the car had "approximately 10,000 miles on it at the time" and that he could not "remember exactly how much [he had] paid for it, but it was around $11,000, $12,000, maybe a little bit more." The state did not produce any other evidence as to the value of the car.

"The law in this state is well settled as to the competency of the owner of property to testify as to its value. [Supreme Court] cases have ruled that the competence of the witness to testify to the value of property may be established by demonstrating that the witness owns the property in question." (Internal quotation marks omitted.) *State* v. *McCarthy*, 197 Conn. 166, 172, 496 A.2d 190 (1985); see also *State* v. *Gabriel*, 192 Conn. 405, 424, 473 A.2d 300 (1984) (victim's opinion as to value of stolen property properly put before jury). Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the state presented sufficient evidence to support the defendant's conviction of larceny in the first degree.

B

With respect to the conviction of robbery of an occupied motor vehicle, the defendant argues that the evidence was insufficient to prove that the vehicle was "occupied" for purposes of § 53a-136a. The record reflects, and the defendant acknowledges, that he did not file a motion for a judgment of acquittal regarding his claim. The defendant failed to preserve his claim at

trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant's insufficiency of the evidence claim is reviewable. See *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993).

The jury reasonably could have found, from the evidence, that the defendant took the vehicle from the occupant, Hulkill. The defendant represented, by his words and body language, that he was armed and ordered Hulkill to drive to the side of the road. The defendant then put the transmission in park and removed the keys from the ignition before ordering Hulkill to get out of the car to switch places with him. The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, brings to bear its common sense and life experiences. On the basis of the cumulative effect of the evidence, the jury reasonably could have found beyond a reasonable doubt that the defendant had "compelled [Hulkill] to relinquish possession and control of his vehicle, and to deliver it to the defendant." *State* v. *Toro*, 62 Conn. App. 635, 643, 772 A.2d 648 (jury reasonably concluded that cumulative effect of evidence sufficient to sustain conviction of robbery of occupied motor vehicle), cert. denied, 256 Conn. 923, 774 A.2d 141 (2001). We therefore conclude that the state presented sufficient evidence to support the defendant's conviction.

## II

The defendant's final claim is that the court should have instructed the jury on robbery in the second degree. See General Statutes § 53a-135 (a) (2). The gravamen of his claim, however, is that the court did not include in its charge on robbery in the first degree the text of the affirmative defense of inoperability of the

displayed pistol or firearm, which, if proved, would reduce the degree of robbery.[1] We disagree.

The defendant seeks review of his unpreserved claim under the plain error doctrine. See Practice Book § 60-5. The defendant's claim fails because he did not assert the affirmative defense of inoperability and there was no evidence presented to support such a defense had it been asserted.[2] "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence." General Statutes § 53a-12 (b). Accordingly, the defendant's claim does not merit consideration under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol . . . or other firearm, except that in any prosecution under this subdivision, *it is an affirmative defense that such pistol . . . or other firearm was not a weapon from which a shot could be discharged. . . .*" (Emphasis added.)

[2] The defendant's reliance on *State* v. *Ortiz*, 71 Conn. App. 865, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002), is misplaced. *Ortiz* is distinguishable insofar as there was uncontroverted evidence in that case that the firearm displayed was inoperable. See id., 868.