## STATE OF CONNECTICUT *v.* TOMMIE L. MARTIN
## (AC 27112)

DiPentima, Gruendel and Rogers, Js.

Argued January 3—officially released April 24, 2007

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Tommie L. Martin, appeals from the judgment of conviction, rendered following a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), robbery in the first degree in violation of General Statutes §§ 53a-133 and 53a-134 (a) (2), and felony murder in violation of General Statutes § 53a-54c. On appeal, the defendant claims that the trial court (1) violated his constitutional rights by allowing the prior testimony of a witness to be entered into evidence, (2) committed plain error by not giving a jury instruction, sua sponte, on the affirmative defense to felony murder and (3) improperly instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 18, 1999, the defendant was with an acquaintance, Nicole Harris, and his cousin, Carlton Martin. With Harris driving, the group stopped at a gasoline station near Gallo's Hi-Way Package Store (Gallo's) in Danbury. After purchasing gasoline, the group exited the station and parked in front of Gallo's. The defendant and Carlton Martin went into Gallo's, while Harris stayed in the parked car. At approximately the same time, two customers also entered Gallo's. The defendant and Carlton Martin returned to the car after a few moments and rejoined Harris. After circling the block a few times, the defendant and Carlton Martin noticed that the attendant, Robert Gallo, was alone in

the store. The defendant told Harris to "slow down" and that Gallo was "in there by himself." Carlton Martin told the defendant, "I have heat on me," and the two men went into the store and attempted to rob Gallo. The defendant and Carlton Martin were unable to gain access to the cash register but took a couple of bottles of liquor from the store. Before leaving the store Carlton Martin shot Gallo several times in the head, thereby causing his death.

The defendant was arrested soon after the incident. In his first jury trial, he was convicted of conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2), robbery in the first degree in violation of §§ 53a-133 and 53a-134 (a) (2), and felony murder in violation of § 53a-54c. On appeal, this court reversed the conviction because the trial court had improperly instructed the jury that the court was taking judicial notice of the conviction of the defendant's alleged coconspirator and accomplice and remanded the case for a new trial. *State* v. *Martin*, 77 Conn. App. 818, 827 A.2d 1 (2003). The defendant was retried in January, 2004. The jury found the defendant guilty of all charges, and the court sentenced him to an effective term of seventy-five years incarceration. This appeal followed.

I

The defendant's first claim on appeal is that the court violated his constitutional rights by allowing the prior testimony of a witness to be entered into evidence. Specifically, the defendant argues that the court improperly determined that one of the state's witnesses, his brother, Gregory Profit, was unavailable on the basis of a blanket assertion of his testimonial privilege. The defendant seeks review under *State* v. *Golding*, 213

Conn. 233, 239–40, 567 A.2d 823 (1989).[1] We will review the defendant's claim because the record is adequate for our review, and his claim is of constitutional magnitude. We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

The following additional facts are necessary for our resolution of the defendant's claim. In the defendant's first trial, Profit, testified about his and Carlton Martin's involvement in the purchase of the gun that was used in the robbery. When Profit was called by the state to testify at the defendant's retrial, outside the presence of the jury, he indicated that he would not answer any questions from the state, defense counsel or the court. When questioned by the court, Profit stated again that he would not answer any questions and claimed that he was invoking his fifth amendment rights.[2] After allowing

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001); see also *State* v. *Estrella*, 277 Conn. 458, 468 n.15, 893 A.2d 348 (2006).

The defendant alternatively argues that his claim was preserved properly. A review of the record shows otherwise. See footnote 2.

[2] The following exchange took place between the court, the state and Profit:

"[The Prosecutor]: Well, I'm asking you questions now, sir. Do you have any intention of answering my questions?

"[The Witness]: No, sir.

"[The Prosecutor]: No matter what I ask you, there's no question you're going to answer?

"[The Witness]: No matter what you ask me, I'm not going to answer your questions. I'm only out here because they said the judge wanted to speak to me alone with nobody else out here.

"[The Prosecutor]: Is it your intention to invoke your fifth amendment right or is it your intention to just refuse questions?

"The Court: Answer the question, sir.

the parties to be heard on the issue of unavailability on the basis of Profit's refusal to testify, the court then allowed Profit's prior testimony to be admitted under the prior testimony exception to the hearsay rule.

Under federal sixth amendment review, "[c]ases involving the admission of an unavailable declarant's

"[The Witness]: I have no intention of talking to you or anybody else.

"[The Prosecutor]: You have no intention to answering questions from the defense attorney in this case—the attorney representing your brother?

"[The Witness]: I just answered that question.

"[The Prosecutor]: You understand that the court may hold you in contempt of court, and you can be sentenced to incarceration; do you understand that?

"[The Witness]: I understand that.

"[The Prosecutor]: And that's not going to change your position?

"[The Witness]: No, sir.

"[The Prosecutor]: I have no more questions based on that, Your Honor.

"The Court: All right. Sir, you understand that I'm ordering you to answer the questions of the state's attorney, and your failure to do so could result in a contempt of court charge, finding against you; do you understand that?

"[The Witness]: Yes, sir.

"The Court: And you—my understanding is that you are not invoking your fifth amendment privilege, is that correct, and you just refuse to testify—refuse to answer any of the questions of either the state or the defense, is that correct?

"[The Witness]: I don't understand, sir.

"The Court: All right. You have a—you've been called as a witness in this case. You testified that you do not intend to answer the questions of the state's attorney or anyone else who asks you any questions. And you understand—is there any reason such that you do not wish to incriminate yourself, that is leading you to the decision or is your position that you refuse to answer any of the questions of the state's attorney because you do not want to answer those questions?

"[The Witness]: My fifth amendment.

"The Court: All right. And—

"[Defense Counsel]: Your Honor, I object at this point and ask that counsel be appointed for him immediately.

"The Court: Mr. Shannon [assistant state's attorney, David R. Shannon].

"[The Prosecutor]: Well, based on the fact that he's invoking his fifth amendment privilege, I don't really—a privilege exists based on the fact that he has already been sentenced, both federal and state for the—for the charges, but, however, the state's not asking the court to hold him in contempt. So, I don't know if it's necessary for counsel to be appointed for him. I don't see the point, although he is due to be released, I believe, in a year or two. I'm not seeking a sentence based on contempt based on his answers unavailable . . . ."

prior statements . . . [give] rise to Confrontation Clause issues because hearsay evidence was admitted as substantive evidence against the [defendant]." (Internal quotation marks omitted.) *State* v. *Outlaw*, 216 Conn. 492, 503, 582 A.2d 751 (1990), quoting *Delaware* v. *Fensterer*, 474 U.S. 15, 18, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). Testimonial hearsay statements "may be admitted as evidence against an accused at a criminal trial only when (1) the declarant is unavailable to testify, and (2) the defendant had a prior opportunity to cross-examine the declarant." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 713, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); see *Crawford* v. *Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The present case centers on whether the declarant was properly determined to be unavailable.

Our Supreme Court has adopted the most common forms of unavailability as those set out in rule 804 (a) of the Federal Rules of Evidence. *State* v. *Schiappa*, 248 Conn. 132, 141–42, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Rule 804 of the Federal Rules of Evidence provides in relevant part: "(a) Definition of unavailability. 'Unavailability of a witness' includes situations in which the declarant . . . (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so . . . ." The advisory committee notes to rule 804 provide some guidance on the issue of unavailability and specifically a declarant's refusal to testify: "Note to Subdivision (a) . . . (2) A witness is rendered unavailable if he simply refuses to testify concerning the subject matter of his statement despite judi-

cial pressures to do so, a position supported by similar considerations of practicality."

The court questioned Profit extensively as to why he was refusing to testify and whether he was claiming a testimonial privilege. After explaining to Profit the significance of asserting his fifth amendment right not to testify, Profit answered affirmatively that he was asserting such a right. The record shows, however, that the court did not rely solely, if at all, on Profit's assertion. After hearing the parties' arguments with respect to Profit's unavailability, the court determined that Profit was unavailable on the basis of his refusal to testify, stating that Profit had "indicated after being questioned extensively by the state that he had no intention of answering any question . . . ." The court went on to state that it was unclear whether Profit would be able to assert his fifth amendment privilege due to the fact that he already had been sentenced for his participation in the crime. The record amply supports the state's contention that the court did not determine Profit's unavailability on the basis of his invocation of a privilege but rather on his refusal to answer any questions presented to him.[3] That refusal satisfies the

---

[3] In determining the issue of unavailability, the court made the following ruling: "There is a two part test for the admissibility of this type of testimony and the first criteria obviously is the unavailability of the state's witness— the court has heard from [Profit] the first witness called by the state. He indicated after being questioned extensively by the state that he had no intention of answering any question, and this is a direct quote of [Profit] directed toward the state's attorney.

" 'I have no intention to answer questions of you or anyone else.' I—I think that whether the defendant has—he has also invoked his fifth amendment privilege, although I don't know whether it would apply or not, and due to the fact he has already been—a sentenced inmate.

"Due to these factors—due to the fact the parties were the same, there is indicia [of] reliability and that—in his prior testimony—chance for cross-examination of the prior trial of [the defendant]. I'm going to rule that [Profit] is an unavailable witness to the state and allow the admission of his prior testimony."

unavailability requirement of rule 804 and provided the court with justification for allowing Profit's prior testimony to be admitted. See *State* v. *Schiappa*, supra, 248 Conn. 141–42. Accordingly, we conclude that the defendant's constitutional rights were not violated when Profit's prior testimony was admitted.

## II

The defendant's next claim on appeal is that the court committed plain error by not giving a jury instruction, sua sponte, on the affirmative defense to felony murder, as outlined in § 53a-54c, where there was uncontroverted evidence that established such a defense. We are not persuaded.

The defendant concedes that *Golding* review is not available with respect to this claim and seeks review of his unpreserved claim under the plain error doctrine.[4] See Practice Book § 60-5. "The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest

---

[4] "We generally do not review unpreserved instructional claims, as we are not bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . . Practice Book § 42-16. . . . [A]n improper instruction on an affirmative defense is not of constitutional magnitude and is not entitled to *Golding* review." (Internal quotation marks omitted.) *State* v. *Ortiz*, 71 Conn. App. 865, 870–71, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002).

injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 239–40, 881 A.2d 160 (2005).

"Pursuant to § 53a-54c, if a defendant charged with felony murder was not the sole participant in the underlying crime, that defendant may claim as an affirmative defense that he or she: '(1) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.' *The defense is only effective if all four elements are met.* The burden of proving these elements is on the defendant, who must prove their existence by a preponderance of the evidence. General Statutes § 53a-12 (b)." (Emphasis added.) *State* v. *Small*, 242 Conn. 93, 99–100, 700 A.2d 617 (1997).

The defendant neither asserted the affirmative defense to felony murder nor presented evidence to support such a defense had it been asserted. As stated previously, pursuant to § 53a-12 (b) "[w]hen a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence." The defendant urges us to follow our line of reasoning in *State* v. *Ortiz*, 71 Conn. App. 865, 874–77, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002), in which we held that it was plain error for the court to have failed to instruct on a defense that was written into the criminal statute. Id., 874–77 & 874 n.3. Unlike the facts and circumstances in *Ortiz*, in which there was uncontroverted evidence that the firearm used in the commission of the crime was inoperable, thus establishing the defendant's defense, in the present case,

the defendant presented no evidence to establish an affirmative defense to felony murder. See, e.g., *State* v. *Hightower*, 81 Conn. App. 377, 381–82, 840 A.2d 32 (plain error not established where defendant did not assert affirmative defense and "there was no evidence presented to support such a defense had it been asserted"), cert. denied, 268 Conn. 918, 847 A.2d 313 (2004).[5] To the contrary, there was evidence presented through the testimony of the state's witness, Harris, to establish that the defendant had reasonable ground to believe that Carlton Martin was armed with a gun moments prior to entering Gallo's. As our Supreme Court has stated on many occasions, "[i]t is not our function to determine if the [trier of fact] was correct in its evaluation of the credibility of [the] . . . witnesses." (Internal quotation marks omitted.) *Sate* v. *Farnum*, 275 Conn. 26, 37, 878 A.2d 1095 (2005); *State* v. *Baldwin*, 224 Conn. 347, 368, 618 A.2d 513 (1993). Accordingly, the defendant's claim does not warrant reversal under the plain error doctrine.

### III

The defendant's final claim on appeal is that the court improperly instructed the jury on reasonable doubt. Specifically, he argues that the court unconstitutionally diluted the state's burden of proof by instructing the jury that reasonable doubt is: (1) "not a doubt suggested by counsel which is not warranted by the evidence"; (2) "a real doubt, an honest doubt"; (3) "a doubt that has its foundation in the evidence or lack of evidence"; and (4) "such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance."[6]

---

[5] We note that our holding in *State* v. *Ortiz*, supra, 71 Conn. App. 874–77, was specifically limited to situations in which "the affirmative defense is written into the statute, and the evidence proving that defense is uncontroverted and introduced by the opposing party." Id., 874 n.3.

[6] We note that the defendant misstated the exact language used by the court in its charge. The correct recitation cited in this opinion is taken directly from the record.

The defendant seeks *Golding* review of this unpreserved claim. We will review the defendant's claim pursuant to *Golding* because there is an adequate record, and "a claim of instructional error regarding the burden of proof is of constitutional magnitude." *State* v. *Howard*, 88 Conn. App. 404, 429, 870 A.2d 8, cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005). We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

"When a challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Straub*, 90 Conn. App. 147, 152–53, 877 A.2d 866, cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005).

After careful review of the charge in its entirety, we are satisfied that it was not reasonably possible that the jury was misled by the court's instruction. The defendant concedes that the portions of the reasonable doubt instruction that he is challenging have been held not to constitute reversible error by our Supreme Court. See, e.g., *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002) (Supreme Court "consistently [has] held that the definition of reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . and as a doubt which in the serious affairs which concern you

in every day life you would pay heed and attention to does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge" [internal quotation marks omitted]); *State* v. *Delvalle*, 250 Conn. 466, 474, 736 A.2d 125 (1999) (doubt suggested by ingenuity of counsel language does not "when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise misle[ad] the jury in any way" [internal quotation marks omitted]). The defendant asks this court to reject Supreme Court precedent and adopt the cumulative error standard for reasonable doubt instructions used by federal courts. We decline that invitation. "[T]his court will not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide." (Internal quotation marks omitted.) *State* v. *Hernandez*, 91 Conn. App. 169, 179, 883 A.2d 1, cert. denied, 276 Conn. 912, 886 A.2d 426 (2005).

The judgment is affirmed.

In this opinion the other judges concurred.