STATE OF CONNECTICUT *v.* MICHAEL G. SMITH
(AC 28280)

Bishop, Robinson and Freedman, Js.

Argued October 17, 2008—officially released February 10, 2009

*Jeffrey C. Kestenband*, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Peter A. McShane*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FREEDMAN, J. The defendant, Michael G. Smith, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55a. On appeal, the defendant claims that the trial court improperly admitted into evidence the prior sworn testimony of a witness from the defendant's previous trial. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 8, 2001, the victim, Eric Dames, went to the Sports Bar in Groton. Also present at the Sports Bar were the defendant and John Thomas. Approximately one week prior to November 8, 2001, Thomas and the victim had a verbal confrontation. There were no problems inside the Sports Bar, however,

on November 8, 2001. When Thomas left the Sports Bar, the victim approached Thomas outside, and the two argued. The argument escalated into a physical fight. At this point, the defendant, who was armed with a gun, came to Thomas' defense. During the course of the fight between the victim and the defendant, the victim punched the defendant in the face, and the defendant dropped the gun. The defendant retrieved the gun, and, when the victim fell, the defendant pulled the victim's jacket over his head and shot the victim. The bullet injured the victim's aorta, causing him to bleed to death.

The defendant was charged with murder and criminal possession of a firearm in connection with this incident. At his trial in 2004, the defendant was convicted of criminal possession of a firearm, but the jury was unable to reach a verdict on the murder charge. *State* v. *Smith*, 91 Conn. App. 133, 135 n.1, 880 A.2d 959, cert. denied, 276 Conn. 917, 888 A.2d 86 (2005). Following retrial on the murder charge in 2006, the defendant was convicted of the lesser included offense of manslaughter in the first degree with a firearm, in violation of §§ 53a-55 (a) (1) and 53a-55a. The defendant then filed this appeal, in which he argues that the court improperly admitted into evidence the prior sworn testimony of Sarah Norton. Specifically, the defendant argues that the state did not make an adequate showing that Norton was unavailable to testify at trial and, further, that the admission of Norton's testimony constituted a violation of his constitutional rights to due process and confrontation.

I

We first consider the defendant's claim that the state did not make an adequate showing that Norton was unavailable.[1] The defendant acknowledges that he did

---

[1] Connecticut Code of Evidence § 8-6 provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the

not object to the introduction of the testimony on this ground, and, therefore, seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] We review the defendant's claim because the record is adequate for our review, and the claim is of constitutional magnitude; we conclude, however, that the defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial. See *State* v. *Martin*, 100 Conn. App. 742, 745, 919 A.2d 508, cert. denied, 282 Conn. 928, 926 A.2d 667 (2007).

Testimonial hearsay statements "may be admitted only when (1) the declarant is unavailable to testify, and (2) the defendant has had a prior opportunity to cross-examine the declarant." *State* v. *Camacho*, 282 Conn. 328, 348–49, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). "[D]ue diligence to procure the attendance of the absent witness [is] . . . an essential . . . predicate of unavailability. . . . To take advantage of the hearsay exceptions requiring unavailability, the proponent must show a good faith, genuine effort to procure the declarant's attendance by process or other reasonable means. . . . This showing necessarily requires substantial diligence. In determining whether the proponent of the declaration has satisfied this burden of making reason-

hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. . . ."

[2] In *State* v. *Golding*, supra, 213 Conn. 233, our Supreme Court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40.

able efforts, the court must consider what steps were taken to secure the presence of the witness and the timing of efforts to procure the declarant's attendance. . . . A proponent's burden is to demonstrate a diligent and reasonable effort, not to do everything conceivable, to secure the witness' presence." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 107 Conn. App. 85, 90, 943 A.2d 1159, cert. denied, 287 Conn. 914, 950 A.2d 1291 (2008). "Because the court's assessment of whether the actions of the state in attempting to find the witness properly could be characterized as having been undertaken with due diligence involve a 'judgment call' by the court, we conclude that the proper of standard of review . . . is the abuse of discretion standard." Id., 89.

The following additional facts are relevant to the issue of whether the state made sufficient attempts to locate Norton. On the second day of the defendant's retrial, counsel for the state, outside the presence of the jury, informed the court that it had issued a subpoena for Norton and that she could not be found. Merritt J. D'Amico, an inspector with the office of the state's attorney in New London, testified that on June 21, 2006, he served a subpoena on Norton, requiring her to report to the court on July 12, 2006, at 9:30 a.m. Norton did not appear on that date and did not contact D'Amico or his office on that date. D'Amico further testified regarding his attempts to meet with Norton subsequent to serving her with the subpoena. Specifically, he testified that he maintained contact with Norton after serving her and informed her in a telephone conversation that he would be in contact with her again closer to the defendant's trial date.

On a subsequent date, D'Amico called Norton's home and received a recorded message that the number was no longer in service. He then left numerous telephone messages on Norton's cellular telephone, at varying

hours of the day and evening, but she never contacted him. On the evening of Monday, July 10, 2006, D'Amico and Thomas Pederson, another inspector with the state's attorney in New London, went to Norton's residence. On that occasion, after no one answered the knock at the door, D'Amico left a business card in the door with a note requesting that Norton contact him as soon as possible. Norton did not contact D'Amico in response to the note. The following day, D'Amico again left several messages on Norton's cellular telephone and returned to her house in the evening but was unsuccessful in contacting her. He observed that Norton's vehicle was not in the parking lot. D'Amico testified that on July 13, 2006, the date of his testimony, he had called Norton's cellular telephone and told her that she was needed in court on that day. He also went to Norton's place of employment, and Norton's boss confirmed that she had been trying to reach Norton as well but had not been successful.

Pederson testified that he was present when Norton was served with the subpoena. He further testified that he went to Norton's residence on July 11 and 12, 2006, but was unable to locate Norton. On July 12, 2006, Pederson asked the Norwich police department to check Norton's residence to determine if she was at the residence. The police did not see any sign of Norton or her vehicle.

On the basis of the foregoing evidence, the court granted the state's request that a capias be issued for Norton's failure to comply with the state's subpoena. The defendant stated that Norton's testimony was "not material at all" and "doesn't have anything to do with the facts of this homicide." On the fourth day of the defendant's retrial, the state explained that further attempts had been made to locate Norton over the previous weekend and that they had been unsuccessful.[3] The

---

[3] The prosecutor stated: "I just want to state that the state has made further attempts to find Sarah Norton over the weekend. Those attempts

state requested that Norton's testimony from the prior trial be admitted and read into the record, and the defendant objected. The court found that Norton was unavailable to testify at trial and that the defendant had an adequate opportunity to cross-examine her at the prior trial.[4] The court, therefore, allowed the reading of Norton's prior testimony into the record.

Our review of the record reveals that the state made a good faith, reasonable and diligent effort to locate Norton and that the court did not abuse its discretion in determining that she was unavailable.[5] Because the court did not abuse its discretion in finding that Norton was unavailable, the defendant has not satisfied the

were unsuccessful. The latest attempt was this morning, Groton town. He went up to her house, over the weekend. There were checks in the parking lot where she normally parks her cars. Her cars were nowhere to be seen. There are two registered to her."

[4] Specifically, the court ruled: "All right. Under [*State* v. *Estrella*, 277 Conn. 458, 893 A.2d 348 (2006)], the Practice Book—the code—the Practice Book and the code, the court determines the witness is unavailable. The defense had the same lawyer, same circumstances.

"The defense had an adequate opportunity to cross-examine the witness. This is no new subject matter—similar to the letter that's in [*State* v. *Estrella*, supra, 277 Conn. 458]—that would affect the right of confrontation and cross-examination for the defense. I'll allow reading of the testimony at the time that the state presents it and the state orders it. And your objection stands."

The adequacy of the defendant's opportunity to cross-examine Norton will be discussed in part II.

[5] In so concluding, we note that in the defendant's brief, he claims that the state presented no evidence concerning Norton's unavailability. According to the defendant, the state's explanation for Norton's unavailability was limited to the prosecutor's comments in court on July 17, 2006, that the state had made further attempts to locate Norton over the weekend but had been unsuccessful and that someone had gone to her residence that morning and that she was not there. The defendant does not mention the testimony of D'Amico or Pederson and the attempts that they made to locate Norton. When questioned about this omission during oral argument before this court, counsel for the defendant conceded that he was unaware of that testimony until he received the state's brief, which cited to the testimony. The defendant, however, took no action to correct his brief to reflect the fact that there was, in fact, testimony on this very issue.

third prong of *Golding* because he has not established that a constitutional violation clearly exists and clearly deprived him of a fair trial.

## II

The defendant next argues that the admission of Norton's testimony violated his fifth amendment right to due process and sixth amendment right to confront his accusers.[6] Specifically, the defendant argues that the court improperly admitted Norton's previous testimony without addressing his argument that she may have engaged in posttestimonial misconduct that would have provided a basis to impeach her credibility had she been a witness at the second trial. The defendant further argues that his cross-examination of Norton at the first trial was unduly narrow in light of new evidence that was presented at the second trial, namely, the testimony of Thomas. We find the defendant's arguments unpersuasive.

"Traditionally, for purposes of the confrontation clause, all hearsay statements were admissible [under *Ohio* v. *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)] if (1) the declarant was unavailable to testify, and (2) the statement bore adequate indicia of reliability. . . . [In *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], the United States Supreme Court overruled *Roberts* to the extent that it applied to testimonial hearsay statements. . . . In *Crawford*, the court concluded that the reliability standard set forth in the second prong of the *Roberts* test is too amorphous to prevent adequately the improper admission of core testimonial statements

---

[6] Although the defendant refers to his fifth amendment right to due process and his sixth amendment right to confront his accusers, his analysis is limited to claimed violations of the sixth amendment. We therefore confine our analysis to a review of the defendant's sixth amendment right of confrontation.

that the [c]onfrontation [c]lause plainly meant to exclude. . . . The court held, therefore, that such testimonial hearsay statements may be admitted as evidence against an accused at a criminal trial only when (1) the declarant is unavailable to testify, and (2) the defendant has had a prior opportunity to cross-examine the declarant." (Internal quotation marks omitted.) *State* v. *Kirby*, 280 Conn. 361, 379, 908 A.2d 506 (2006). Having concluded in part I that the court did not abuse its discretion in finding that Norton was unavailable, we now consider whether the defendant had a constitutionally adequate opportunity to cross-examine Norton at the first trial.

Before addressing this issue, we note that "[a]lthough *Crawford* expanded to all testimonial statements the constitutional rule that a defendant must be afforded the right of cross-examination, that case did not portend to alter the preexisting case law as to what that right entails. . . . As we have stated often, [t]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination . . . the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . The right of confrontation is

preserved [however] if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Estrella*, 277 Conn. 458, 472–73, 893 A.2d 348 (2006). Because the determination of whether the defendant's cross-examination of Norton was constitutionally adequate is a question of law, and because "any limitation on the impeachment of a key government witness is subject to the most rigorous appellate review . . . we scrutinize the testimony to make that determination." (Citation omitted; internal quotation marks omitted.) Id., 474.

With these principles in mind, we first consider the defendant's argument that the court improperly admitted Norton's prior testimony without determining whether she had engaged in posttestimonial misconduct. According to the defendant, this case must be remanded for a hearing to determine whether Norton had engaged in any impeachable misconduct after she testified at the first trial, and, if so, whether such evidence should be admitted into evidence pursuant to § 4-3 of the Connecticut Code of Evidence.[7] The defendant's claim must fail, however, because there is no evidence or any proffer of evidence that Norton engaged in any impeachable misconduct after her testimony at the first trial.[8]

In *State* v. *Estrella*, supra, 277 Conn. 458, our Supreme Court noted that *"Crawford* [v. *Washington*, supra, 541 U.S. 68] does not address whether evidence that did

---

[7] Connecticut Code of Evidence § 4.3 provides in part that "[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise . . . ."

[8] The defendant acknowledges that the record is unclear on this point but contends that the court should have addressed the issue once it was raised by the defendant.

not exist at the time of the prior opportunity for cross-examination can somehow render that opportunity inadequate and therefore render the prior testimony inadmissible." Id., 475. The court in *Estrella* assumed, without deciding, that "such evidence is relevant to the adequacy of the prior cross-examination" but concluded, nonetheless, that there was no new evidence that would have rendered the prior cross-examination inadequate. Id. We similarly conclude, in the present case, that there is no new evidence that would have changed the scope of cross-examination. The defendant merely speculates that because most of the state's witnesses "have accumulated new fodder for cross-examination," Norton may have had a subsequent felony conviction or convictions relating to veracity, and, therefore, the admission of her prior testimony violated his constitutional rights. As noted by our Supreme Court, however, "[w]e do not ordinarily remand for further fact-finding based on nothing but speculation"; *State* v. *Cobb*, 251 Conn. 285, 426, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); and we see no reason to do so in the present case. Accordingly, we decline to conclude that the defendant's constitutional rights were violated by the failure of the court to inquire into the possibility that Norton may have engaged in posttestimonial misconduct.

The defendant further contends that he did not have a constitutionally adequate opportunity to cross-examine Norton at his first trial in light of Thomas' testimony at the second trial concerning an important factual dispute. Specifically, in the testimony that was admitted, Norton testified that she was present at the Sports Bar on the night in question. She saw the victim at the bar that night, and he was "carefree, dancing around, joking, laughing." There was nothing going on at the bar or in her conversations with the victim that night that caused

her any alarm or concern. Norton left the bar when it closed; she did not observe any problems at that time. She made plans to meet the victim later that night at her house. According to the defendant, this testimony is inconsistent with Thomas' testimony at the second trial that he told the defendant he was "having a problem with someone in the bar" and that he "had a beef" with the victim prior to seeing him on the night in question. The defendant argues that Norton's testimony undermined the defendant's theory that Thomas was the shooter, which the defendant has based on Thomas' dispute with the victim. The defendant further contends that the admission of Norton's prior testimony provided only a portion of what she would have said at the second trial, not her complete answers to the defendant's questions concerning her observations of any dispute between the victim and Thomas.[9] We find this claim unavailing.

Our review of the transcript reveals that the defendant had an adequate and full opportunity to cross-examine Norton and to address whether she was giving truthful testimony. Specifically, the defendant questioned Norton about her relationship with the victim,[10] how much Norton had to drink on the night in question, and about claimed inconsistencies between her trial testimony and a statement she had given to the police. No restrictions were placed on the defendant's ability to cross-examine Norton at the first trial. "Measuring

---

[9] In objecting to the introduction of Norton's testimony, counsel for the defendant argued that the state was "going to be using her testimony to basically counterbalance John Thomas that said they had a beef in the bar, to discuss [the defendant], this guy is giving me a hard time. But don't worry, I'm strapping. She's going to contradict all of that.

"Had I known what Mr. Thomas was going to say at the first trial, maybe I would have been more alert and objected to this. It would have been more relevant in this trial than the first trial. But I didn't have a chance to cross-examine her on those issues."

[10] Norton testified that they previously had lived together and then remained good friends.

the defendant's ability to cross-examine [the witness] on matters affecting his reliability and credibility in order to comport with the constitutional standards embodied in the right to cross-examine . . . we are satisfied that the defendant was provided the requisite procedural safeguard to the right of confrontation." (Citation omitted.) *State* v. *Estrella,* supra, 277 Conn. 474–75.

We further conclude, as our Supreme Court did in *State* v. *Estrella,* supra, 277 Conn. 475, that there was no new evidence that would render the prior opportunity for cross-examination inadequate. Norton's testimony at the first trial that there was nothing going on at the Sports Bar that caused her any alarm or concern is not inconsistent with Thomas' testimony at the second trial that there were no problems inside the Sports Bar that night[11] and that the problems began after he left the bar, which was when it closed. Norton testified that she left the bar when it closed so she would not have been present when the altercation took place in the parking lot later that night. We therefore conclude that the court properly admitted into evidence Norton's prior sworn testimony from the defendant's first trial. See id., 476–77.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] Thomas testified as follows:

"Q. Then, when you saw [the victim] at the Sports Bar, did he stare you down?

"A. No.

"Q. Did you grill or stare at him?

"A. No.

"Q. Did you have any problems while in the bar with him?

"A. No.

"Q. Did there come a time—how about the defendant . . . did he have any problems with . . . [the victim]?

"A. No.

"Q. And did there—was there anything that occurred in the bar that would make you think there would be trouble there?

"A. No."