******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOMMIE MARTIN *v.* COMMISSIONER OF
CORRECTION
(AC 33223)

Beach, Sheldon and West, Js.

*Argued October 30, 2014—officially released January 27, 2015*

(Appeal from the Superior Court, judicial district of
Tolland, T. Santos, J.)

*Tommie Martin*, self-represented, the appellant
(petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *Stephen J. Sedensky III*, state's
attorney, and *Angela R. Macchiarulo*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Tommie Martin, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims on appeal that the habeas court erred in finding that the his trial counsel did not render ineffective assistance by: (1) not cross-examining a witness about her prior convictions and money received while in the witness protection program; (2) not requesting a jury instruction regarding accomplice testimony; and (3) calling at trial a defense witness who provided an inculpatory identification.[1] We disagree and affirm the judgment of the habeas court.

The facts regarding the petitioner's underlying conviction, as recited by this court on direct appeal, are as follows: "On January 18, 1999, the [petitioner] was with an acquaintance, Nicole Harris, and his cousin, Carlton Martin. With Harris driving, the group stopped at a gasoline station near Gallo's Hi–Way Package Store (Gallo's) in Danbury. After purchasing gasoline, the group exited the station and parked in front of Gallo's. The [petitioner] and Carlton Martin went into Gallo's, while Harris stayed in the parked car. At approximately the same time, two customers also entered Gallo's. The [petitioner] and Carlton Martin returned to the car after a few moments and rejoined Harris. After circling the block a few times, the [petitioner] and Carlton Martin noticed that the attendant, Robert Gallo, was alone in the store. The [petitioner] told Harris to 'slow down' and that Gallo was 'in there by himself.' Carlton Martin told the [petitioner], 'I have heat on me,' and the two men went into the store and attempted to rob Gallo. The [petitioner] and Carlton Martin were unable to gain access to the cash register but took a couple of bottles of liquor from the store. Before leaving the store Carlton Martin shot Gallo several times in the head, thereby causing his death." *State* v. *Martin*, 100 Conn. App. 742, 743–44, 919 A.2d 508, cert. denied, 282 Conn. 928, 926 A.2d 667 (2007).

The petitioner was charged with felony murder in violation of General Statutes § 53a-54c, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). The petitioner was found guilty as charged by a jury in 2000 (first trial). That conviction was reversed by this court and remanded for a new trial. *State* v. *Martin*, 77 Conn. App. 818, 820, 827 A.2d 1 (2003).[2] On remand, the petitioner was found guilty as charged in a second jury trial in 2004 (second trial) and received a total effective sentence of seventy-five years incarceration. *State* v. *Martin*, supra, 100 Conn. App. 744. The petitioner's 2004 conviction was affirmed on appeal. Id., 743.

The petitioner filed a second amended petition for a writ of habeas corpus, and the habeas trial took place on June 22, 2010.[3] The habeas court denied the petition but granted the petitioner certification to appeal. This appeal followed.

"Our review of the judgment of the habeas court is carefully circumscribed. The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Whether the representation a [petitioner] received . . . was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Vivo* v. *Commissioner of Correction*, 90 Conn. App. 167, 173, 876 A.2d 1216, cert. denied, 275 Conn. 925, 883 A.2d 1253 (2005).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong." (Internal quotation marks omitted.) *Santaniello* v. *Commissioner of Correction*, 152 Conn. App. 583, 587, 99 A.3d 1195, cert. denied, 314 Conn. 937, 102 A.3d 1115 (2014). "The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 147 Conn. App. 307, 313–14, 82 A.3d 666 (2013), cert. denied, 311 Conn. 917, 85 A.3d 652 (2014).

I

The petitioner first claims that the habeas court erred in determining that his trial counsel was not ineffective for failing to impeach or discredit Harris, a state witness, by confronting her with her criminal record and the fact that she received money while in the witness protection program. We disagree.

During the petitioner's first trial, Harris was in protective custody. At the habeas trial, Harris testified that she had received approximately $1373 for food and incidental expenses during that time. She also testified that she had been convicted of larceny in the sixth degree in March, 1997, and of larceny in the fifth degree in April, 1997. The petitioner argues that his trial counsel should have questioned her regarding both the payments and her criminal record. At the habeas trial, the petitioner's trial counsel testified that he knew Harris had been in protective custody and had received money, but he thought that receipts showing that she received funds through the witness protection program had been introduced at trial and "spoke" for themselves. He also testified at the habeas trial that testimony at the second trial reflected that Harris had been staying in a hotel, paid for by the state, during her time in the witness protection program. Trial counsel also testified that he did not think he could have impeached Harris with one of the convictions. The habeas court found neither deficient performance nor prejudice in trial counsel's cross-examination of Harris.

Our review of the record indicates that the petitioner's trial counsel cross-examined Harris about the fact that she had been in protective custody and that she had signed an immunity agreement with the state to testify in exchange for the state's not filing criminal charges against her. Trial counsel also introduced into evidence the immunity agreement with the state that Harris had signed. This evidence was sufficient to alert the jury to potential issues regarding Harris' credibility. The habeas court reasonably concluded that evidence of Harris' relatively minor convictions seven years before her testimony at the second trial realistically had far less bearing on her credibility than the topics chosen by trial counsel for his cross-examination. We conclude, on the facts reasonably found by the habeas court, that trial counsel's cross-examination did not fall below an objective standard of reasonableness and, therefore, his performance was not deficient. We do not reach the prejudice prong. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d

1203 (*Strickland* test satisfied only if both prongs found), cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

## II

The petitioner next claims that his trial counsel was ineffective for failing to request a jury instruction regarding accomplice testimony, in reference to the testimony of Harris. We disagree.

Harris drove the petitioner and Carlton Martin to and from Gallo's. Harris accepted the murder weapon from Carlton Martin and hid it at her parents' house. The habeas court credited Harris' testimony at the habeas trial that she did not know about the crimes until after they were committed. Harris signed an immunity agreement and was not charged with any crime in relation to her involvement in exchange for her testimony. The trial court included in its instructions to the jury a general instruction to consider carefully the credibility of all the witnesses' testimony.[4] Trial counsel did not request that the court instruct the jury specifically that Harris was an accomplice and that the jury should very carefully scrutinize her testimony and her motives. Trial counsel testified at the habeas trial that the petitioner had denied any involvement in the crime, and, therefore, he did not consider Harris to be an accomplice.[5] The habeas court found that trial counsel's decision not to ask for the accomplice testimony jury instruction was not indicative of deficient performance and did not prejudice the petitioner.

"Generally, a defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . An exception to this rule, however, involves the credibility of accomplice witnesses. . . . [When] it is warranted by the evidence, it is the court's duty to caution the jury to scrutinize carefully the testimony if the jury finds that the witness intentionally assisted in the commission, or if [he or she] assisted or aided or abetted in the commission, of the offense with which the defendant is charged. . . . [I]n order for one to be an accomplice there must be mutuality of intent and community of unlawful purpose. . . .

"With respect to the credibility of accomplices, we have observed that the inherent unreliability of accomplice testimony ordinarily requires a particular caution to the jury [because] . . . [t]he conditions of character and interest most inconsistent with a credible witness, very frequently, but not always, attend an accomplice when he testifies. When those conditions exist, it is the duty of the [court] to specially caution the jury." (Internal quotation marks omitted.) *State* v. *Bree*, 136 Conn. App. 1, 18, 43 A.3d 793, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012).

Turning first to the performance prong, we note that

trial counsel had a strategic reason for not requesting an accomplice testimony instruction: he thought labeling Harris an accomplice might appear to be inconsistent with the petitioner's testimony from the first trial, introduced into evidence in the second trial, that he was not present during the robbery and murder. "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . . It is well established that [a] reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Internal quotation marks omitted.) *Ramey* v. *Commissioner of Correction*, 150 Conn. App. 205, 213–14, 90 A.3d 344, cert. denied, 314 Conn. 902, 99 A.3d 1168 (2014). Although the decision may not have been optimal, at least there was a rational basis for it. The habeas court properly determined that counsel's performance in failing to request an accomplice testimony instruction was not deficient.[6]

The prejudice prong of *Strickland* also was not met. Harris testified at the second trial that she was driving the car, she hid the gun, and was in protective custody. The entire text of the immunity agreement she signed with the state's attorney was also read into the record.[7] The jury had information available to them concerning her participation in the incident and her motivation to testify in favor of the state. There is no reasonable probability that the outcome of the proceeding would have been different if the trial counsel had requested, and the jury had received, the accomplice testimony instruction. The petitioner has met neither the performance prong nor the prejudice prong.

### III

Finally, the petitioner claims that his trial counsel was ineffective in presenting Della Mae Brown as a witness because she produced inculpatory identification evidence. We disagree.

Della Mae Brown was called as a witness for the state in the petitioner's first trial. Her testimony concerned the identity of two men she observed at Gallo's on the date of the murder. Trial counsel called Brown as a defense witness in the petitioner's second trial, and counsel testified at the habeas trial that he believed that her testimony may have tended to raise reasonable doubt.[8] In her original statement to police officers, Brown had claimed to recognize one of the men as "Poo," a childhood friend of one of her children, and she gave a description of the other man that did not match the petitioner: a short and light skinned, Hispanic-looking male.[9] Brown also testified, at the first trial, that she later told the police that she had been mistaken in her identification of Poo after his sister

came to speak to her, and she discovered someone had thrown an object through her car window. Brown had not identified the petitioner as one of the men at Gallo's on the day of the murder until she testified at the petitioner's first criminal trial, after she had seen his picture in the paper. The habeas court found neither deficient performance nor prejudice in calling Brown as a defense witness.

"It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 148 Conn. App. 517, 526–27, 85 A.3d 1199, cert. denied, 312 Conn. 901, 91 A.3d 908 (2014).

The habeas court properly determined that trial counsel's performance was not deficient. Trial counsel had read the transcripts of the petitioner's first trial and made a strategic decision to use Brown's testimony at the second trial to undermine the identification of the petitioner. Although Brown ultimately identified the petitioner, she previously had identified another individual, and her retraction occurred under questionable circumstances. The petitioner has not overcome the presumption that, by highlighting these facts, his trial counsel's conduct fell within the wide range of reasonable professional assistance. Therefore, we conclude that the petitioner has not met his burden to prove ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The state claims that the petitioner's claims should be summarily rejected because they are all based on inadequate investigation, which the petitioner did not allege in his habeas petition. We do not agree; we address only the claims of ineffective assistance raised in the habeas petition.

[2] The petitioner's first conviction was reversed because the court improperly took judicial notice of Carlton Martin's conviction in its instructions to the jury. See *State* v. *Martin*, supra, 77 Conn. App. 822.

[3] In addition to the claims subject to appeal, the petitioner claimed at the habeas trial that his trial counsel rendered ineffective assistance by not adequately impeaching or discrediting a witness, Della Mae Brown. In his posttrial brief to the habeas court, he abandoned this claim.

[4] "[Y]ou must decide which testimony to believe and which testimony not to believe. . . . In making that decision, you may take into account a number of factors including the following . . . . Did the witness have an interest

in the outcome of this case or any bias or prejudice concerning any party or any matter involved in this case.''

[5] Trial counsel testified that the petitioner maintained his innocence throughout the trial, and labeling Harris an accomplice could have created an inference that he, too, was involved. Finally, trial counsel testified that he did not think the instruction would have hurt his case, but he also did not see a way it would have helped it.

[6] ''Our Supreme Court has identified several factors that are relevant in determining whether a court properly declined to issue an instruction to the jury regarding accomplice testimony: whether the witness was charged with the crimes for which the defendant was tried, whether there was evidence presented at trial that directly linked the witness to the crimes as an accomplice, whether the jury was privy to evidence about the witness' whereabouts during the commission of the crimes, whether the witness was subject to cross-examination and whether the court issued instructions regarding the credibility of witnesses generally.'' *State* v. *Underwood*, 142 Conn. App. 666, 675–76, 64 A.3d 1274, cert. denied, 310 Conn. 927, 78 A.3d 146 (2013).

[7] The jury heard Harris' testimony and immunity agreement twice, as they asked to hear it again during deliberations.

[8] The petitioner agreed at one point in time. At the underlying criminal trial, the state introduced a letter the petitioner wrote while incarcerated: '' 'I'm gonna make sure that lady who identified [another person] is subpoena[ed]. The shit she stated is guaranteed reasonable doubt.' ''

[9] The petitioner is African-American.